## LIABILITY FOR LOSS OF HOGS NOT DRENCHED IN TRANSIT.

[Circuit Court of Wood County.]

THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY
v. JAMES GIBSON.

Decided, January 12, 1906.

*Railways—Liability of, for Negligence—Can not be Limited by Custom
or Contract—Evidence—As to Overcrowding of Car—Loaded with
Hogs and Sheep—Failure to Cool Hogs in Transit by Sprinkling.*

1. In casting upon a railway company the burden of a common carrier
   the law prescribes what it shall do, and the responsibility thereby
   assumed by the company can not be limited by any custom which
   it may itself establish or even by special contract, where the claim
   made against it is based on negligence.
2. It therefore follows, in an action for recovery for the loss of hogs
   in transit, the allegation being that the hogs died from the heat
   by reason of failure to drench them properly, that the railway
   company can not absolve itself from liability by showing it was
   not its practice to throw water on hogs in the night time or at
   all unless so ordered by the shipper.

HAYNES, J. (orally); PARKER, J., and WILDMAN, J., concur.

James Gibson brought in the court of common pleas an action
against the Lake Shore & Michigan Southern Railway Company
to recover for the loss of certain hogs shipped from Luckey, this
county, to Buffalo, N. Y. The shipment took place on the 4th
of August, 1900, and it is claimed on behalf of the plaintiff that
the hogs died by reason of the railroad company failing to prop-
erly drench the hogs, as it is termed; that is to say, from time
to time during the day to spray them with water to keep them
cool; and the allegations in the petition are that the defendant
failed in that respect and it is, therefore, liable for the loss of
the hogs.

The defendant denies the allegation of the petition in that
respect and sets up by way of defense that there was a special
contract, but upon the trial of the case the testimony was that
the special contract had never been delivered or accepted by
Gibson, and the court ruled it out, so that it is not before us.

The case was tried upon the issue made in the pleadings in regard to the matter of spraying or drenching. The hogs, it appears, were loaded in the afternoon into a car at Luckey and were sent to Toledo over the Ohio Central railroad, arriving there in the evening, and were picked up about eight o'clock, or such a matter, by the Lake Shore railroad and taken to Buffalo, where they arrived twelve or fourteen hours later.

It is claimed, and evidence is offered tending to show, that the hogs when they were placed in the car by the plaintiff below, were overcrowded, that is, the cars were overloaded when the hogs were put in, and that was largely the cause of the death of the hogs; the hogs becoming overheated and scrambling, pushing and crowding each other in the car in their efforts to get air and rest. And it is urged that that is a matter of contributory negligence for which the plaintiff below should be responsible, and should exonerate the company.

Perhaps it is well enough at this point to cite a case decided by the Supreme Court of Ohio, the case of *The Union Express Company* v. *Graham*, 26 Ohio St., 595. There, there had been a shipment from Cleveland to Ravenna of a certain article of furniture that had been done up, not in a very careful manner, in fact done up in wrapping paper when it should have been boxed, and the court found that it could have still have been carried by the express company, if they had used extraordinary care and diligence. Judge White on page 598 said:

"It is settled by a series of decisions in this state that a common carrier can not, by stipulation with his employer, exempt himself from liability for loss or damage occasioned by his own negligence or that of his servants."

That general rule does not apply here because there was no special contract as alleged, for it is ruled out. In the case cited, when the article of furniture came to the express office it was found it was not properly packed, and the express company refused to receive it except at "owner's risk," and it is claimed that was agreed to. The court in the opinion say:

"The present case is sought to be withdrawn from the operation of these rules by the fact that the property in question was not properly packed when delivered to the carrier; and it is

claimed that, under the circumstances, the carrier is to be regarded as a mere bailee for hire. We do not assent to this view. The plaintiff in error, while engaged in the business of a common carrier, could not by agreement divest itself of that character. The only effect of the agreement was to relieve it from the liabilities imposed by the common law on public carriers where there was no fault or neglect on the part of the carrier.

"The carrier may well refuse to receive property, unless it is properly packed. But if he receives it the duty attaches of exercising due care for its safe carriage. If, notwithstanding such care, the property should be damaged through the defective packing of the owner, the carrier would be relieved from liability. But where, as in this case, the carrier takes charge of the property for the purpose of carriage, the duty rests on him to show that the injury is attributable to the defective packing and not to any fault or neglect on his part. This the plaintiff in error failed to show."

There is no special agreement in this case. The bill of lading is here, and it is a general bill of lading. In the trial of the case, testimony was offered on the part of the plaintiff as to the condition of the hogs, and the condition of the weather, and especially the condition of the hogs late in the day that they were taken. The testimony shows at the time the hogs were taken, two of them appeared to be affected by the heat. Nevertheless, the railroad company received these hogs and forwarded them. There is testimony tending to show that the railroad company has made provision for the drenching or spraying of stock at different points along the line of the road by means of a hose attached to water pipes at places where they take water, that the water is turned into the cars and thus drenches the hogs. The plaintiff proceeded to show this fact, and further showed that it was the custom of the railroad company to sprinkle the stock; that they were sprinkled at different points along the railroad.

The railroad company, when it came to its side of the case, offered testimony tending to show that the hogs were overpacked or overcrowded in the loading; that is, that certain hogs were put in a car with a number of sheep, and this packed the hogs too closely together and subjected them to injury by heat. There is testimony on the part of the plaintiff in rebuttal, tending to show that they were not improperly packed. The defendant

desired to show that it was the custom and practice of the railroad company not to sprinkle hogs during the night season, and also testimony regarding their habit during the day not to sprinkle them unless it was ordered by the shipper, and some of that testimony was refused by the court.

Some testimony was allowed to be given, however, in regard to the effect of sprinkling sheep, and in regard to the effect of sprinkling when hogs were packed in with sheep; it being claimed it was dangerous to sheep to sprinkle them with water when on the road because they would catch cold and become less marketable.

These are called customs, and to the extent that they are in the course of business, the testimony offered by the plaintiff, we think, was admissible, but we are unable to see that the court erred in refusing the testimony of the defendant. The effect of the testimony would be to limit the liability of the railroad company by its own customs. It could not do that. The law casts upon the railroad company the burden of common carriers and says what it shall do and it can not limit it by any custom they may undertake to establish themselves. They can not do it even by special contract if it is caused by negligence.

We understand the rule of the Supreme Court is that when they received those hogs they were bound to use due care in the transportation of the hogs in protecting them from injury although they were overpacked in the cars. Testimony was offered tending to show by some witnesses that they were overpacked, and that the packing resulted in the death of some of these hogs. Testimony was also offered tending to show that the air moving through the cars, when they were in motion, would be sufficient to cool the hogs. All of that testimony the court admitted, and so far as we can observe, the court also excluded the class of testimony which would tend to show a custom that would absolve the railroad company from liability and which, as I have stated, they are not permitted to do.

We think that the court made a fair statement of the case and a fair charge to the jury of the law of the case. We think that there was not sufficient care on the part of the agents of the railroad company during the day in regard to the sprinkling of

these hogs; we think that it might have been done with a little care, without injury to the sheep. We are, therefore, disposed to allow the verdict of the jury to stand in the court of common pleas and the judgment will be affirmed without penalty.

*E. D. Polter* and *James O. Troup*, for plaintiff in error.

*Ed. Beverstock*, for defendant in error.